Good morning. The next case on the calendar is TOT Property Holdings v. Commissioner of Internal Revenue. We have Barbara Smith for the appellant and Anthony Sheehan for the appellee. Are you both ready to proceed? Yes. Yes, Your Honor. Okay. Ms. Smith, would you like to save five minutes for rebuttal? Yes, please. Okay. And Mr. Sheehan, you may want to mute yourself while Ms. Smith is making the argument. Thank you very much. All right, Ms. Smith, you may proceed. Thank you. Thank you, Your Honor. And may it please the Court, Barbara Smith for appellant TOT. Congress wanted to incentivize land conservation, and it did so in part by allowing those who donate lands to conservation organizations to take a tax deduction for the amount of that donation. Among other statutory requirements that Congress imposed on conservation easements, it requires that those easements be donated to the conservation organization in perpetuity in order to be qualified for the tax deduction. The IRS has interpreted that statutory term, in perpetuity, in its regulations in ways that has varied over time. At issue here is a particular section of those IRS regulations governing extinguishment proceeds. Extinguishment proceeds occur, for example, if the government were to come in and condemn land through eminent domain that was otherwise protected by a conservation easement. And in that case, notwithstanding that there would otherwise be an easement on the land, the conservation purposes of the donation continue to be protected in perpetuity, so long as the proceeds of that extinguishment proceeding are donated to the conservation organization according to a regulatory formula. The tax court here committed a fundamental error when it wrongly interpreted Section 9 of the underlying conservation easement and held that that provision violated the IRS regulations on extinguishment proceedings. And as a result of that, the tax court invalidated the entire amount of the tax deduction taken by my client. But Foothills Land Conservancy, the conservation organization here, drafted this deed of easement, including Section 9, and it knew what it was doing when it did that. It included the language in Section 9 that expressly references the IRS's extinguishment proceeding provisions and held that in all cases, the formula incorporated in the regulations allows the conservation organization to take maximal advantage of proceeds from any extinguishment proceedings. The government's only argument why that particular provision of a hypothetical future extinguishment proceeding invalidates the entire deduction is a misreading of the plain language of Section 9. The government argues that the language referring expressly to the regulations and holding that they control the distribution of proceeds isn't an interpretive provision, but is rather a condition subsequent that renders the entire amount of the deduction invalid. The error that the tax court committed in holding that that in perpetuity violation occurred in Section 9 here infected the entire decision below and merits this court's reversal. Let me set aside two, three things. First, I understand you do not challenge the validity of the regulation. That's correct, Your Honor. Second, you do not challenge that the subtraction language in the easement deed is inconsistent with the regulation. I would argue that it's inconsistent with the IRS's current view of the regulation. And I think that that's an important distinction because it explains why the formula in Section 9.2 appears in the easement and why the language in Section 9.1 explaining that the regulations otherwise control appears there and was included by Foothills Land Conservancy. I'm not sure what you just said. The Fifth Circuit has held that that subtraction language is inconsistent with the regulation. Do you? I do not understand you to challenge that holding of the Fifth Circuit, do you? So I think it's important to look at everything the Fifth Circuit said about the language of that particular provision. Of course, it says nothing. The regulation says nothing about adding or subtracting post-grant improvements. It's silent on that question. And as the Fifth Circuit explained at 900 F3rd 205 to 207, the IRS previously viewed the language in the regulation differently, including through various private letters it issued to various taxpayers explaining, you know, you may be able to allow for post-improvement provisions and to deduct those amounts from extinguishment proceedings. I'm not contesting that that's the view the IRS holds today. Obviously, the IRS now has flip-flopped on that question and interprets the regulations differently. But I do think it's important history for the court to know why there could be an alternative formula in this particular deed of easement and why the interpretive provision is there because of that potential for the IRS's shifting view of the regulations over time. All right. I think I understand what your position is on that. Third, I do not understand you to challenge the fact that if this, if different, your override clause, if your override clause is in fact a condition subsequent savings clause, you do not challenge the fact that if it is a condition subsequent savings clause, then it is not operative and does not operate to, in effect, save your deduction. Well, that's certainly what the tax court held below. So I think if this court agreed with that interpretation, it would be affirming rather than reversing. But I think the clearest reason why this is not a savings clause is obvious if the court just looks at the language that was at issue in the Fourth Circuit cases, Belk and Proctor, and compares that to the plain language of the interpretive provision here. Unlike the Fourth Circuit cases, there's nothing about the underlying conveyance that will change over time, depending on this language. Quite the opposite. The underlying conveyance remains the same, and the conservation organization is... in your easement is a condition subsequent savings clause on the one hand or an interpretive clause on the other hand. Is that not the... That's right. That's right, Your Honor. That's correct. First question, it seems to me that your subtraction language is unambiguous. I don't see anything there to interpret. In other words, if the regulation were consistent with that language, there's nothing in that language that is unclear, is it? In the deed of easement, I do think the regulation itself is unclear. Well, but the crucial thing is, is your language, what I call the subtraction language... The Section 9 language. I see nothing ambiguous about that. Am I wrong? There is certainly a formula in the deed of easement that includes the post-grant subtraction of improvements on the property. Yes, Your Honor. So how can it be an interpretive provision if there's nothing to interpret? Because I think it's important to keep in mind the way in which that clause in the deed ends. It doesn't say in all cases, in all events, you apply the formula in 9.2 that includes the subtraction language you just mentioned. It says you either apply the regulations, and it expressly cites to those regulations, which include the different formula, or you apply the 9.2 language. But then it makes clear that if there's a conflict between those two things, the regulations control. And so that's why I think it's interpretive and not a condition subsequent. But may I ask you a question? In order for us to find that the proportionality formula contained in Section 9, I guess we'd have to find that it's interpretive. Because if it's not interpretive, then wouldn't it be a violation of the regulation? So I think that the important language that is interpretive is the if different language in 9.1, which I think is then echoed in 9.2, the last clause of 9.2. That's the provision that's operative here. That's the interpretive operative provision, not the explanation of the formula in the deed itself. Can I ask you a question about the appraisal of the tax court's findings as the appraisal? Yeah. The findings were that the aren't those findings reviewed for clear error? Yes, Your Honor. And so how can we say that they clearly erred here? Well, first of all, I think you have to resolve the in perpetuity question, the extinguishment clause question first. And then, you know, getting to the valuation issue if the court decides that it wants to do that rather than simply remanding. I think the fundamental error, and we've listed several in our briefs, was the tax court essentially discredited our expert in his entirety on the basis of a single typographical error in the expert report related to the, you know, alleged mountain landscape that doesn't exist. So the tax court looked at that clause and said, well, you know, that doesn't apply here, and therefore I'm discounting the rest of your valuation. I think that's the most fundamental error in the tax court's decision regarding the valuation, although there are there are others as well. I would like to ask you this with respect to the valuation. It seems to me that there was an arm's length sale very shortly before this easement deed was given, and that sale was about $1.05 million, as I recall, which is very, very close to the $1.1 million that the government's expert came up with as the value. How can you possibly get around that? Well, Your Honor, you know, I think valuations generally are more art than science, and so while it's certainly a fact that there was a, you know, a subsequent sale with a particular sale price, I don't think that answers the question what the value of the easement is at the time of the transfer. Thank you. Ms. Messick, you have five minutes remaining for rebuttal. Mr. Sheehan? Yes. May it please the Court. I'm Anthony Sheehan for the Commissioner of Internal Revenue. Thank you. Good morning. Good morning. The argument so far has focused mainly upon the formula in the easement deed and also what TOT Holdings calls its treasury regulation override. There is no question in our minds that the formula in the easement deed, which is quite clear, allows a subtraction, and the regulation does not provide for a subtraction as the Fifth Circuit correctly held in PBBM v. Rose Hill. It's interesting why TOT Holdings in their brief would call this a treasury regulation override unless they thought there was a problem in something that had to be overridden, and that is the key to why these – those following clauses in the easement deed are, in fact, impermissible savings clauses as the tax court correctly found. The key to a savings clause is that it sets up a conflict. We start with the proposition from the regulation that the donor organization is entitled to a – is entitled to a correct deed from the get-go. The regulation says that it has to get a property right immediately vested, and that property right has to be protected in perpetuity. One of the property rights is the right if the easement is traditionally extinguished to a portion of the proceeds to ensure the public good of the conservation purpose continuing. Here, in this case, there is that stark conflict, either if this easement were ever to be extinguished by a court, either TOT Holdings is allowed to have a subtraction and gets more proceeds or a third party, and it can be the Tennessee court. I know TOT in its reply brief says the federal government, but no, it can be the Tennessee court, which would probably be ruling on this. We'll have to make a decision, and the decision will impact how much money. It's a choice between allowing the subtraction or not allowing the subtraction. And that is why it is triggered by a future event. Correct. Somebody, the IRS or a federal court or a state court or a settlement, maybe, but somebody has got to determine that there is a conflict between the easement formula and the regulation formula, or else the easement formula will apply. That is correct. As the tax court said, in its opinion, it's Volume 7 at page 468. There is no reason to believe, had this not come to light in this case, that the extinguishing court would do anything other than simply award the easement formula, which would give TOT less money than it is entitled to under the regulation. Mr. Sheehan, may I ask you a question? Yes. In order for the Section 9 language or provision to have been proper in order for it to receive a deduction, what would be the language that it would have to make sure that it was something that was going to be held in perpetuity? I would make two suggestions for that. One is that the attorney drafting this deed could simply copy and paste the regulatory language, or even simpler, could say that the proceeds upon extinguishment shall be distributed as required by the regulation. That gives TOT holdings an immediate property right, the immediate property right to which it is entitled under the law. Very simple, and there's no need to even try to come up with formulas. If the regulatory language is in there, or if the regulation references the source to go to, then that is sufficient to protect this, to provide for that aspect of this donation and of this deduction. Turning to the other matter of which the Court has discussed so far, which is the appraisals, as the Court has recognized this is— Before you get to the appraisals— I'm sorry? Yes, Your Honor. It seems to me, I was trying to figure out why the deduction was dependent upon this protected in perpetuity, and how this language really violated that. I think the way it violated it is, and why a condition subsequent savings clause is impermissible, is what the taxpayer was trying to do here was to maximize what would come to the donor upon condemnation, and minimize what was coming to the donee. And if there'd been no audit at all, then the easement formula would have applied, and the donee would have gotten the proceeds without any increase in value attributable to improvements. So that there was a real chance that this donee would not get what the law requires in perpetuity. In other words, if it were absolutely remote, and no chance that the donee would get less than it should get, then I would have a hard time saying the whole deduction ought to fall. But if there is a chance, and it does seem to me it is, then I can see the rationale behind eliminating the deduction. Is that the reasoning behind this kind of framework? Yes, Your Honor, it is. The donee is entitled to a property right immediately, not a cause of action. It was quite likely, as Your Honor has said, and as the tax court said, that in an extinguishment proceeding several years down the road, that the court would simply look to the formula in the easement deeds if the parties agreed to it. And even if Foothills were to decide to fight this, as the TOT has said, as in the record, it was Foothills, the donee organization that drafted the easement deed. And in Tennessee, an ambiguous provision in a contract will be construed against the party drafting it. I would cite for that Allstate Insurance Company v. Watson at 195 Southwest 3rd 609. It seems to me that the greatest likelihood that the donee would receive less than the regulation requires is that if there were no litigation at all and the condemnation matter was simply settled, as most condemnation matters are. Yes, if there was no litigation and the TOT and Foothills sat down, they'd probably just look at the easement deed and say, well, there's a subtraction for improvements. I interrupted you, so get back to the, you were headed to the appraisals. Yes, Your Honor. Just briefly, as the court has recognized, it is a clearly erroneous standard. TOT tries to chalk it all up to the tax court overemphasizing one sentence in their experts report talking about the property being suitable for a residential mountain retreat development. Problem with that is that there is ample evidence in the record, especially from the commissioner's expert. And going on to this court's statement in Palmer Ranch Holdings and also in the regulation, the key here is whether the property is needed or likely to be needed in the reasonably near future. That's Palmer Ranch or the Treasury regulation. How immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed. That's the key here. If you look at Van Buren County, Tennessee, rural county, 75% undeveloped. Lots of land up there, as Gerald Barber, commissioner's expert, said. This property is not particularly attractive. It's relatively flat. It doesn't have lakes. It's been cut of the natural flora and commercially planted in loblolly pine and rose. There's other developments like Overton Retreat up to the, I think it's the northwest, about five miles away, that has lakes. It has ample recreational facilities. By 2013, the time at issue, they had only been able to sell 62 out of the 90 lots and only 21 had been developed. There's ample superior land in this county that a developer would look to first to develop. There's really no reason to get to this piece of land in the reasonably near future after 2013. If there are no further questions, we would ask the court to affirm. I would note that we did reserve, if the court certainly can and we think should affirm on the arguments made, but we did at page 8, note 5, and page 60, note 14, did reserve three issues for remand. If the court finds it could not affirm. Otherwise, we rest on our brief, and I thank the court. Thank you, Mr. Sheehan. Ms. Smith, you have five minutes. Thank you, Judge Lagoa. I'd like to start with Mr. Sheehan's response to a question that you asked Judge Lagoa. I believe you asked him how a conservation organization could draft an extinguishment clause that would be consistent with the regulations. I heard him say two things. One, the conservation organization could copy and paste the regulatory language, or two, it could say something akin to the extinguishment proceedings would be distributed as required by the regulations. Respectfully, I think that is exactly what Section 9 here does. It doesn't copy and paste the entire language of the CFR regulations, but it expressly cites to the relevant provision that includes the formula and says that provision controls the outcome of extinguishment proceedings. So I'm not sure how the conservation organization could have been clearer that if there's any ambiguity about the amount to which they are entitled, they are entitled to the amount allowed them under the IRS's regulations. The problem I have with that is that what was attempted here was to have a lesser amount go to the donee. And if there had been no audit, there is a good chance, it seems to me, that a lesser amount would have gone to the donee. And that's why these conditions subsequent savings clauses are impermissible. I'm glad you asked me that, Judge Anderson, because I wanted to discuss that conversation you had with opposing counsel during his time. And here's why I think that's not the right way to think about this particular case. First of all, Section 9 wasn't drafted by my client, the taxpayer, in order to accomplish tax avoidance. It was drafted by Foothill's Land Conservancy, the conservation organization, and their interest is to maximize the amount of proceeds to which they would be entitled. And so I think that touches on a couple of things, including why this particular case is so important. And that's because Foothill Land Conservancy's attorney, who drafted this deed of easement, testified before the tax court that he drafted many other easements with very similar language. And so invalidating this provision, invalidating this deduction, invalidates similar deductions that are otherwise totally unobjectionable and valid that Foothill's itself was entering into in order to further their conservation purposes. So, you know, we might be sort of vulnerable to, you know, Your Honor's concern if we had drafted the deed of easement, if we, the taxpayer, had drafted it, but we didn't. And the second important point I think to take away from- That would be more convincing to me if you were challenging the validity of the regulation, but you are not challenging the validity of the regulation. And that's because I think under any interpretation of the regulation, the language in Section 9 complies with it. And I think that, you know, my second sort of answer to Your Honor's concern would be to think about if there were this hypothetical future extinguishment proceeding, what that looks like. That doesn't have sort of the strong arm of the IRS coming in to save the day and protect the conservation organization. That has the conservation organization itself showing up at court, just like my client would, to talk about how the proceeds of any extinguishment would be distributed. And the judge adjudicating that proceeding would look to Section 9 and say, okay, I see two things here. I see, you know, a potential way to distribute these proceeds according to 9.2, or I see this reference to the statutory formula that has another, you know, potentially different formula in it. But the deed specifically says the IRS regulations control. So I think there's no chance that any judge worth his salt would be confused about how to distribute extinguishment proceeds and that the conservation organization would get the maximum value to which they're entitled in such a proceeding. So the one issue the court hasn't touched on today that I do want to make sure I touch on, if only briefly, is the issue of IRS supervisor approval for the 40% overvaluation penalty here. I think it's, you know, it's an important taxpayer protection that when the IRS is going to levy a 40% overvaluation penalty, that the communication of that penalty to the taxpayer in the first instance is expressly endorsed and approved by an IRS supervisor. And the record here unequivocally establishes that that wasn't the case. So the IRS's failure to comply with that statutory mandate and its own internal regulations, I think independently merits a close look by this court at the 40% overvaluation penalty. It is not the, does not the same Fifth Circuit case hold in a very similar situation that the supervisor successfully approved? So the Fifth Circuit's Rose Hill case, I think, was right on the question of savings clause versus interpretive provisions, but was wrong on the question of supervisory approval for the penalty. And I think if this court takes an honest and faithful look at the plain text of the statute that Congress passed, and even the plain text of the regulations the agency itself uses to interpret that statute about supervisory approval, it's clear that contemporaneous approval was not given here. So yes, I think the Fifth Circuit just got it wrong on this question. Thank you, Your Honor. Thank you, Mr. Sheehan. We appreciate the arguments and we'll take the matter under advisement. Thank you.